J. Kevin West, ISB #3337
HALL, FARLEY, OBERRECHT & BLANTON, P.A.
702 West Idaho, Suite 700
Post Office Box 1271
Boise, Idaho 83701
Telephone: (208) 395-8500
Facsimile: (208) 395-8585

John J. Egbert - 011469
JENNINGS, STROUSS & SALMON, P.L.C.
The Collier Center, 11th Floor
201 East Washington Street
Phoenix, Arizona 85004-2385
Telephone: (602) 262-5911
Facsimile: (602) 495-2615

Attorneys for Defendants Tessenderlo Kerley, Inc., and Steve Sailors

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| GARY FENWICK,<br><br>Plaintiff,<br><br>v.<br><br>TESSENDERLO KERLEY, INC., a Delaware Corporation; STEVE SAILORS, an Individual; and DOES 1 through 50,<br><br>Defendants. | Case No. CIV 03-384-S-MHW<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL BACKGROUND.

For a detailed recitation of the facts pertinent to Defendants' Motion for Summary

Judgment, the Court is referred to the Defendants' Statement of Facts, filed contemporaneously

herewith.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 1
W:\3\3-334\msj-memo.doc



## II. PLAINTIFF'S SEXUAL HARASSMENT CLAIM IS BARRED BY THE STATUTES OF LIMITATION.

In his first four claims for relief, Plaintiff asserts claims against TKI for sex discrimination and harassment based on Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act ("IHRA"). *See* Complaint at First to Fourth Claim for Relief. However, Plaintiff admitted in his deposition that he asserts no claim for sex discrimination. (SOF at ¶ 56).

Plaintiff's sexual harassment claims are barred by the applicable statutes of limitation. To be timely under Title VII, Plaintiff must file a charge within 300 days of the alleged harassment. 42 U.S.C. § 2000e-5(e). To be timely under the IHRA, Plaintiff must file a charge within one year. Idaho Code § 67-5907(1). In this case, Plaintiff did not file his charge until April 29, 2003. (SOF at ¶ 58).

Plaintiff bases his sexual harassment claims on five allegations, all of which Plaintiff claims occurred between 1999 and 2001. (SOF at ¶ 57). Because they all occurred more than a year before Plaintiff filed his charge, his sexual harassment claims are barred by the statute of limitations. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S. Ct. 2061, 2074 (2002).

Even if Plaintiff's sexual harassment claims were not barred by the statute of limitations, they would not survive summary judgment in any event because they cannot meet the requirement of being "severe and pervasive." *Faragher v. Boca Raton*, 524 U.S. 775, 786, 118 S. Ct. 2275 (1998); *see also Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1077 (9th Cir. 1986) ("The Idaho Supreme Court has held that the same standards of proof applicable in Title VII cases govern actions under IHRA. . . . Thus, if Sengupta's claim must fail under Title VII, it must also fail under IHRA."). The United States Supreme Court has repeatedly made it clear

that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment,'" *Clark County School District v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508, 1510 (2001) (quoting *Faragher*, 524 U.S. at 788, 118 S. Ct. at 2283), and that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788, 118 S. Ct. at 2283-84 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998)).

In this case, Plaintiff relies just on a half dozen alleged comments by Mr. Sailors, spread over more than two years, most of which were nothing more than Mr. Sailors referring to his own "butt." (SOF at ¶ 57). They were nothing more than "simple teasing, offhand comments, and isolated incidents," and therefore are not enough to support a sexual harassment claim. Accordingly, TKI is entitled to summary judgment.

## III. PLAINTIFF DOES NOT QUALIFY FOR FMLA PROTECTIONS AND NEVER SOUGHT FMLA LEAVE.

Plaintiff asserts claims against TKI based on the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). *See* Complaint at Fifth and Sixth Claims for Relief. These claims fail as a matter of law for at least two reasons.

First, employees enjoy the benefits and protections of FMLA only if they work at a location where the employer has at least 50 employees within a 75 mile radius. *See* 29 U.S.C. § 2611(2)(B)(ii). That requirement clearly is not satisfied in this case. TKI has never employed 50 or more employees within 75 miles of the Burley plant. (SOF at ¶ 59). Thus, Plaintiff's reliance on FMLA in his complaint is misplaced.

Second, the inclusion of the FMLA claims in Plaintiff's complaint is patently improper in light of Plaintiff's admission that he did not use or even attempt to use FMLA leave while a TKI employee, and that he was not even aware that a FMLA claim had been asserted on his behalf. (SOF at ¶ 60). Thus, Plaintiff's FMLA claims must be dismissed; indeed, they never should have been asserted in the first place. *See Bailey v. Southwest Gas Co.*, 275 F.3d 1181 (9th Cir. 2002) (plaintiff never requested nor intended to request FMLA leave).

## IV.  PLAINTIFF'S PHYSICAL IMPAIRMENTS DO NOT SUBSTANTIALLY LIMIT A MAJOR LIFE ACTIVITY.

Plaintiff asserts claims against TKI for discrimination and harassment based on the Americans With Disabilities Act ("ADA"). *See* Complaint at Seventh and Eighth Claims for Relief. However, these claims fail as a matter of law because Plaintiff does not qualify for the protections of the ADA.

The ADA prohibits discrimination against "a qualified individual with a disability." 42 U.S.C. § 12112(a). "Disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individuals," a record of such an impairment or being regarded as having such an impairment. 42 U.S.C. § 12102(2). Measures to correct or mitigate an impairment "must be taken into account when judging whether [the Plaintiff] is 'substantially limited' in a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482, 119 S. Ct. 2139, 2146 (1999).

To support his ADA claim, Plaintiff relies on the physical impairments of diabetes and heart disease. (SOF at ¶ 61). Plaintiff has Type II diabetes; he is not insulin-dependent. Instead, he controls his diabetes by diet and medications. (SOF at ¶ 62). His diabetes prevents Plaintiff from participating in the eating aspects of parties, and requires that he take time out periodically to address the symptoms of high or low sugar levels. (SOF at ¶ 63). However, by

Plaintiff's own admission, it does not interfere with driving, exercising or living a normal life. (SOF at ¶ 64). Nor does his diabetes prevent him from being a chemist or doing any other job that does not involve hard, manual labor. (SOF at ¶ 65).

Similarly, Plaintiff's heart disease limits the kinds of exercise in which he can participate and the level of strenuousness. For example, he used to be able to work out on a treadmill for an hour; now the most he can do is twenty minutes. (SOF at ¶ 66). Plaintiff also limits his physical labor; he mows his law using a rider mower and he takes his cars to the shop rather than work on them himself. (SOF at ¶ 67). However, his heart disease does not prevent him from working full-time chemist jobs. (SOF at ¶ 68).

Accordingly, by Plaintiff's own admission, his physical impairments do not substantially limit a major life activity. Therefore, his ADA claims fail as a matter of law.

## V.    PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff claims that the real reason TKI terminated his employment was in retaliation for his complaints about alleged sex harassment and alleged environmental and safety violations, and in retaliation for seeking accommodations for his alleged disabilities. He therefore claims this retaliation violates Title VII, the IHRA, the ADA and seven separate state and federal environmental and safety statutes. *See* Complaint at First to Fourth and Seventh to Ninth Claims for Relief.

To state a prima facie case of retaliation, Plaintiff must demonstrate that: "1) he engaged in a protected activity; 2) he suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). In this case, Plaintiff cannot even state a prima facie case because he has no evidence of the required causal link. *Accord id.* at 1064-65;

*see also Clark County School District v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508, 1511 (2001)

("The cases that accept mere temporal proximity between an employer's knowledge of protected

activity and an adverse employment action as sufficient evidence of causality to establish a

prima facie case uniformly hold that the temporal proximity must be 'very close.'").

Even if Plaintiff could state a prima facie case of retaliation, his claims still fail as a

matter of law because he has no evidence that TKI's legitimate, nondiscriminatory reason for

terminating Plaintiff's employment is merely a pretext for unlawful motives. *See Villiarimo*,

281 F.3d at 1065 n.10.  TKI has consistently asserted that Plaintiff's termination was the result

of the decision to eliminate the chemist position at the Burley plant.  The following facts are

undisputed:  (1) at the time TKI purchased the Burley plant, it seriously considered whether it

made sense to have a Ph.D. chemist working exclusively at that plant, (SOF at ¶ 20); (2) most of

the sampling and other chemistry functions which Plaintiff performed at the Burley plant were

performed at TKI's ten other manufacturing plants by lab technicians (who have substantially

less education and are paid substantially less compensation than Plaintiff was), (SOF at ¶ 19);

(3) TKI has never before employed a chemist to work exclusively at one of its manufacturing

plants, (SOF at ¶ 19); (4) TKI's manufacturing plants are supported by the corporation's central

chemical lab, which is overseen by a Ph.D. chemist, (SOF at ¶ 18); (5) TKI decided to extend an

offer to Plaintiff in the hope that Plaintiff's educational background and experience might yield

additional value to the organization, (SOF at ¶ 20); (6) it turned out that Plaintiff did not have

enough work to do to keep him busy, and he often sat around waiting for some work to do and

even rewrote old company documents just so it would look like he was busy, (SOF at ¶¶ 25-27);

(7) Plaintiff himself very often wondered why TKI kept him employed when he had so very

little to do, (SOF at ¶ 28); (8) over the past four years, as the result of the economic downturn,

TKI has eliminated a total of 89 positions in a series of layoffs, (SOF at ¶ 49); and (9) the elimination of the chemist position at the Burley plant was part of TKI's efforts to reduce costs and improve profitability, (SOF at ¶ 50).

Because Plaintiff has no direct evidence of pretext, the circumstantial evidence he relies on "must be 'specific' and 'substantial.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). The only facts on which Plaintiff relies to claim that TKI's reason for terminating his employment is a pretext are the fact that TKI had just constructed a new lab at the Burley plant; his assumption that TKI must have hired someone to replace him, otherwise they would not be able to keep making product; and his belief that some environmental agencies require that wastewater analysis at the Burley plant be overseen by a degreed person. (SOF at ¶ 71). These are far from "specific and substantial," and are little more than expressions of Plaintiff's beliefs and assumptions.

The fact that TKI built a new lab at the Burley Plant does not support Plaintiff's claim in the least. It is beyond dispute that TKI needs the product being manufactured to be analyzed periodically, whether by Plaintiff or another person or persons. Thus, the new lab would be useful for that purpose regardless of whether Plaintiff was employed or terminated. Plaintiff is apparently under the erroneous assumption that no one else was capable of analyzing the samples to keep the product within required specifications. Notwithstanding this assumption, Plaintiff has no evidence that TKI has hired someone new to replace him at the Burley plant. Thus, it is undisputed that for more than a year since Plaintiff's termination, the Burley plant has managed just fine without him. Especially in light of Plaintiff's own admission that he very often wondered himself why TKI had not laid him off sooner (SOF at ¶ 28), Plaintiff's beliefs cannot, as a matter of law, defeat summary judgment.

**VI.    PLAINTIFF'S CLAIMED BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW.**

Plaintiff claims TKI breached the covenant of good faith and fair dealing.   *See* Complaint at Tenth Claim for Relief.  An act which "violates, nullifies or significantly impairs any benefit or right which either party has in the employment contract, whether express or implied, is a violation of the covenant." *Crea v. FMC Corp.*, 135 Idaho 175, 180, 16 P.3d 272, 277 (2000).

Plaintiff bases this claim on the allegation that TKI prevented him from receiving the benefits of advancement in his profession, professional recognition and interfacing with safety people.  (SOF at ¶ 74).  However, Plaintiff also admits that no one ever promised these benefits to him; he simply believes they are always implied whenever a "professional" is hired.  (SOF at ¶ 75).

Plaintiff is wrong as a matter of law.  The law does not automatically impose these obligations on employers every time they hire a "professional."  Thus, because Plaintiff was not entitled to these things, they cannot be the basis for claim for breach of the covenant of good faith and fair dealing.

**VII.   DEFENDANTS' CONDUCT DOES NOT SATISFY THE "EXTREME AND OUTRAGEOUS" REQUIREMENT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

Plaintiff also asserts claims for intentional infliction of emotional distress ("IIED") against both Mr. Sailors and TKI.  *See* Complaint at Eleventh Claim for Relief.  These claims fail as a matter of law because the alleged conduct on which Plaintiff relies does not come close to the "extreme and outrageous" requirement.

To recover for IIED, a plaintiff must show four elements:

> (1) the conduct must be intentional or reckless; (2) **the conduct must be extreme and outrageous**; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe.

*Evans v. Twin Falls County*, 118 Idaho 210, 796 P.2d 87, 97 (1990) (emphasis added), *cert. denied*, 498 U.S. 1086 (1991). "Extreme and outrageous" conduct means conduct that is "so outrageous in character, and is so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Restatement (Second) of Torts* § 46, cmt d (1965). Moreover, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recover, or whether it is necessarily so." *Id.* at § 46, cmt h; *see also Lord v. Swire Pacific Holdings, Inc.*, 203 F. Supp. 2d 1175, 1180 (D. Idaho 2002) (granting motion to dismiss IIED claim because allegations "are inadequate as a matter of law to demonstrate the requisite extreme and outrageous conduct").

Plaintiff bases his IIED claim against Mr. Sailors on his allegations of sexual harassment, discrimination and steadily taking duties away from him. (SOF at ¶ 72). Even if the Court accepts as true Plaintiff's allegations, the alleged conduct does not come close to the level of extreme and outrageous conduct. *See Jeremiah v. Yanke Machine Shop, Inc.*, 131 Idaho 242, 953 P.2d 992, 999 (1998) (affirming JNOV because "there is no evidence that the conduct was so 'severe and outrageous' as to support a claim;" alleged conduct included being called demeaning names, physical threats, obscenity being used related to the plaintiff's national origin, and plaintiff's truck being scratched and his tire deflated). Accordingly, Plaintiff's IIED claim against Mr. Sailors fails as a matter of law.

Plaintiff bases his IIED claim against TKI on the same allegations he uses against Mr. Sailors, plus his claim that his interactions with another supervisor "were not the best," he caught that supervisor in lies and that supervisor was overbearing. (SOF at ¶ 73). These additional allegations, as a matter of law, are not extreme or outrageous, and TKI is therefore entitled to summary judgment.

## VIII.   PLAINTIFF'S CLAIMS FOR SLANDER AND LIBEL ARE BARRED BY THE STATUTE OF LIMITATIONS OR OTHERWISE FAIL AS A MATTER OF LAW.

Plaintiff also asserts claims of libel and slander against TKI and Mr. Sailors. *See* Complaint at Twelfth Claim for Relief. His claims are based on six alleged statements by Mr. Sailors. (SOF at ¶ 76). However, Plaintiff admits that three of the alleged statements (SOF at ¶ 76(a)-(c)) were made prior to September 8, 2001, which is the two-year cutoff under the applicable statute of limitation because Plaintiff filed his suit on September 8, 2003. *See* Idaho Code § 5-219(5) (requiring that actions for "libel [or] slander" be brought within two years).

The remaining three alleged statements also fail as a matter of law. First, Plaintiff alleges that Mr. Sailors wrote in memos to his superiors, Mr. Paul and Mr. Strickland, that Plaintiff did not want to be a team player. (SOF at ¶ 76(d)). However, none of the documents Plaintiff produced in support of his slander/libel claim say anything about Plaintiff not wanting to be a team player. (SOF at ¶ 77). Moreover, it is undisputed that Plaintiff did not consider himself to be a team player. (SOF at ¶ 29).

Second, Plaintiff claims that Mr. Sailors told Plaintiff that he did not know what he was talking about. No one else was present when the statement was made. (SOF at ¶ 76(e)). Because no one other than Plaintiff heard the statement, there was no "publication" and therefore no slander as a matter of law. *See Restatement (Second) of Torts* § 558 (1976) (requiring a "publication to a third party").

Finally, Plaintiff learned secondhand that Mr. Sailors allegedly told someone that Plaintiff was a "dumb old fuddy-duddy." (SOF at ¶ 76(f)). Such a comment has no real meaning, is mere opinion and is non-actionable name-calling. As one authority explained:

> Common-law tradition has combined with constitutional principles to clothe the use of epithets, insults, name-calling, and hyperbole with virtually impenetrable legal armor.
>
> "It is axiomatic that opprobrious epithets, even if malicious, profane and in public, are ordinarily not actionable." There are a variety of possible rationales:  that it is clear to the listener or reader that such language is no more than either an idle comment or the venting of the speaker's or writer's emotions and therefore does not reflect adversely on the plaintiff's reputation; that epithets properly understood may be merely a form of nonactionable opinion; and that courts cannot or should not intervene every time an unflattering word or expression is used.

1 R. Sack, *Sack on Defamation* § 2.4.7 (3d ed. 2004); *see also* D. Elder, *Defamation:  A Lawyer's Guide* § 1.5 (1993) ("Such terms have no real meaning except to indicate that the individual who used them was under a strong emotional feeling of dislike toward those about whom he used them.") (citations omitted).  For these reasons, the reference to Plaintiff as a "dumb old fuddy-duddy" cannot support a defamation claim and Defendants are entitled to summary judgment.

**IX.    PLAINTIFF STATES NO CLAIM FOR BREACH OF CONTRACT.**

Plaintiff also claims TK1 breached its employment agreement with him. *See* Complaint at Thirteenth Claim for Relief.  Specifically, he claims TK1 breached his employment agreement by:  (1) not providing severance pay to him upon termination; and (2) violating the covenant of good faith and fair dealing.  (SOF at ¶ 80).

As already demonstrated above, Defendants are entitled to summary judgment with respect to the claim based on the covenant of good faith and fair dealing. *See supra,* at § VI. Plaintiff's other breach of contract argument (that TKI failed to give him severance pay) fails for at least two independent reasons.

First, this claim is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001-1461. ERISA preempts "courts from entertaining any state law claims arising from an employee benefit plan, whether they are grounded in contract or tort." *Atwood v. Western Construction, Inc.*, 129 Idaho 234, 240, 923 P.2d 479, 485 (Idaho Ct. App. 1996); *see also Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992) (holding that a severance plan was an ERISA plan ), *cert. denied*, 507 U.S. 1031 (1993). Plaintiff's claim for severance pay arises out of TKI's formal Severance Pay Plan created pursuant to and governed by ERISA. (SOF at ¶ 52 and Ex. 5 to Ex. B). Accordingly, Plaintiff's breach of contract claim related to severance benefits under TKI's plan is barred by ERISA preemption.

Second, even if not preempted, Plaintiff's claim fails under the clear and unambiguous terms of TKI's Severance Plan. Plaintiff's argument is that he was not required to provide a release to TKI in order to get eight of the nine weeks of severance pay offered to him; only if he wanted all nine of the offered weeks of pay was he required to sign a release. (SOF at ¶ 54). This argument is baseless. The Severance Plan could not be clearer:

> An "Eligible Employee" shall become a Participant **if, and only if, the Eligible Employee (a) properly executes the release agreement set forth in Exhibit A** . . ..

(SOF at Ex. 5 to Ex. B (at ¶ 2.1) (emphasis added)). The letter notifying Plaintiff of his termination similarly made it clear that severance benefits were "contingent on receiving from you a signed General Release Agreement." (SOF at Ex. 35 to Ex. A). Because Plaintiff refused

to sign the required lease, he did not become a participant under TKI's Severance Plan and TKI did not breach its contract. Accordingly, Plaintiff's breach of contract claim fails as a matter of law.

## X.    PLAINTIFF FAILS TO STATE A CLAIM OF ESTOPPEL.

Plaintiff asserts a claim of estoppel against TKI. *See* Complaint at Fourteenth Claim for Relief. He bases this claim on an allegation that TKI promised to terminate Plaintiff's employment only for cause. *Id.* at ¶ 109. Plaintiff's estoppel claim fails because Plaintiff's own deposition testimony demonstrates that TKI made no such promise.

Under Idaho law, "the doctrine of quasi-estoppel has its basis in acceptance of benefits; it precludes a party from asserting to another's disadvantage a right inconsistent with a position previously taken by him or her." *Parker v. Boise Telco Federal Credit Union*, 129 Idaho 248, 256, 923 P.2d 493, 501 (Idaho Ct. App. 1996); *see also Raedlein v. Boise Cascade Corp.* 129 Idaho 627, 630, 931 P.2d 621, 624 (1996). Plaintiff cannot state such a claim because he admits that TKI's employee handbook expressly states that he can be terminated for any reason and no one at TKI ever told him anything different from that. (SOF at ¶ 8). Thus, because TKI has not taken inconsistent positions to Plaintiff's detriment, his estoppel claim fails as matter of law.

## XI.    PLAINTIFF CANNOT STATE AN INVASION OF PRIVACY CLAIM.

Plaintiff also asserts claims for three different forms of the tort of invasion of privacy against TKI and Mr. Sailors. *See* Complaint at Fifteenth to Seventeenth Claims for Relief. Idaho has recognized four distinct types of invasion of privacy: intrusion upon seclusion, public disclosure of private facts, false light, and appropriation. *Hoskins v. Howard*, 132 Idaho 311, 316, 971 P.2d 1135, 1140 (1998). Plaintiff attempts to assert claims based on the first three

types, but Defendants are entitled to summary judgment on each of these claims as a matter of law.

A.    False Light.

Plaintiff's false light claim (Fifteenth Claim for Relief) clearly fails.    An essential element of this claim is that "there must be some 'public disclosure of falsity or fiction concerning the plaintiff.'"    *Id.* (quoting *Baker v. Burlington Northern, Inc.*, 99 Idaho 688, 691, 587 P.2d 829, 832 (1978)).    The "publicity" requirement is satisfied only when information is communicated "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."    *Restatement (Second) of Torts* § 652D cmt. a (1977).

Plaintiff bases his false light claim on: a statement which Mr. Sailors wrote in a "pass down journal" to the operators at the Burley plant and a memorandum which Mr. Sailors sent to Messrs. Paul, Strickland and Solano. (SOF at ¶ 81).    A statement made to several operators or to just three management employees does not come close to satisfying the "publicity" requirement of this claim.    Accordingly, summary judgment is warranted.

B.    Public Disclosure of Private Facts.

Plaintiff's claim for public disclosure of private facts (Sixteenth Claim for Relief) fails for at least two reasons. First, Plaintiff cannot establish one of the essential elements of this claim: "public disclosure." *See Hoskins v. Howard*, 132 Idaho 311, 317, 971 P.2d 1135, 1141 (1998) ("there must be a public disclosure").    Plaintiff basis this claim on his belief that Mr. Sailors disclosed information to the operators at the Burley plant about Plaintiff's health from a questionnaire intended for an insurance company. (SOF at ¶ 82).    Even if this belief were assumed to be true, Plaintiff's claim fails because disclosure to a handful of operators is not

disclosure "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Restatement (Second) of Torts* § 652D cmt. a (1976).

Second, Plaintiff's claim for public disclosure of private facts also fails because Plaintiff admits he has no evidence on which to base his belief that Mr. Sailors made the alleged disclosure in the first place. (SOF at ¶ 83). Pure speculation and conjecture is not sufficient to withstand summary judgment.

C.      Intrusion Upon Seclusion.

Plaintiff's claim for intrusion upon seclusion (Seventeenth Claim for Relief) also fails as a matter of law. Unlike Plaintiff's other two invasion of privacy claims, a claim for intrusion upon seclusion does not require public disclosure. *See Uranga v. Federated Publications, Inc.*, 138 Idaho 550, 553, 67 P.3d 29, 32 (citing *Restatement (Second) of Torts* § 652B cmt. a (1976)), *cert. denied*, 124 S. Ct. 277 (2003). However, to be actionable, the intrusion must be of a place to which the plaintiff has secluded himself or his private affairs:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.

*Restatement (Second) of Torts* § 652B cmt b (1976).

In this case, Plaintiff bases his claim of intrusion upon seclusion on allegations that Defendants threw away his intellectual documents kept at work, destroyed his software, refused to give him a place to keep his private papers under lock and key, refused to give him his own office and refused to give him his own computer. (SOF at ¶ 84). None of these allegations involves an intrusion into Plaintiff's secluded, private areas or property such as his home, private mail or wallet. *See Uranga*, 138 Idaho at 32, 67 P.3d at 553 (affirming summary judgment for defendant because "examination of a public court record cannot be the basis of a claim for invasion of privacy by intrusion"). Accordingly, Plaintiff fails to state a claim as a matter of law.

## XII.   NO CLAIM FOR NEGLIGENCE OR NEGLIGENCE PER SE EXISTS UNDER THESE FACTS.

Plaintiff next adds negligence and negligence per se to his laundry list of claims against Defendants. *See* Complaint at Eighteenth and Nineteenth Claims for Relief. Specifically, Plaintiff claims Defendants were negligent by:  (1) failing to respond when Plaintiff talked to upper management; (2) failing to investigate safety and environmental issues; (3) failed to investigate allegations of sex harassment; and (4) failed to investigate when he complained about the health of his eyes in the lab. (SOF at ¶ 85). Because there is, as a matter of law, no tort duty of care owed to Plaintiff under these circumstances, Defendants are entitled to summary judgment.

The exclusive remedy of the worker's compensation system generally bars negligence claims by employees against their employers. *See Baker v. Sullivan*, 132 Idaho 746, 749, 979 P.2d 619, 622 (1999). However, "[e]ven if a negligence claim survives the workers' compensation bar, the employee still faces the often insurmountable burden of establishing the existence of a duty owed by the employer to the employee." A. Feliu & W. Johnson, *Negligence in Employment Law* at 80-81 (2002). Whether a tort duty exists is a question of law for the court

to decide, *Summers v. Cambridge Joint School District No. 432*, 139 Idaho 953, 88 P.3d 772, 774 (2004), and courts have consistently refused to recognize a tort duty in this context:

> Although the common law traditionally has recognized that an employer has a duty to provide a safe working environment, courts generally have refused to extend this duty to cover purely economic harm (e.g., loss of employment), and have instead analyzed the relationship of the parties with respect to economic harm almost entirely as an issue of contract, not tort.

*Id.* at 81; *see also* 2 H. Perritt, Jr., *Employee Dismissal Law and Practice* at 172 (4th ed. 1998) ("The majority of recent decisions denies that any duty of care in supervising the employment relationship arises in tort law, independent of contract.").

The absence of duty is particularly clear when -- as in this case -- the employment relationship is at-will. A. Feliu & W. Johnson, *Negligence in Employment Law* at 81-82 (2002) ("Because the employer retains the right to terminate an at-will employment relationship at its discretion, courts have generally refused to impose a duty on employers to prevent economic harm. To hold otherwise would be inconsistent with this fundamental aspect of the at-will doctrine."). No reported Idaho decision recognizes a negligence claim in an employment context such as this. Accordingly, Defendants are entitled to summary judgment.

Moreover, Plaintiff's negligence per se claim also fails because the two statutes on which he bases his claim, the Idaho Human Rights Act, Idaho Code §§ 67-5901 to -5912, and the Idaho Hazardous Waste Management Act, Idaho Code §§ 39-4401 to -4422, expressly provide for civil liability for their violation. *See* Idaho Code §§ 67-5907 to -5908 (allowing for filing of complaints and lawsuits) and 39-4413 (allowing both administrative and civil enforcement actions). The issue of negligence per se arises only when the statute at issue does not specifically provide that a violation entails civil liability; when the statute does so provide, "the court must apply it." *Restatement (Second) of Torts* § 286 cmts. c and d (1976); *accord Brown v. Caldwell*

*School District No. 132*, 127 Idaho 112, 118, 898 P.2d 43, 49 (1995) ("Any relief to which Brown is entitled for a violation of the statutory procedure is provided directly by the statute itself, and no additional remedy is provided by the implied covenant of good faith and fair dealing."). Thus, Plaintiff's negligence per se claim fails for this additional reason.

## XIII. PLAINTIFF'S IMPLIED-IN-FACT CONTRACT CLAIM FAILS AS A MATTER OF LAW.

Finally, Plaintiff asserts a claim for breach of an implied-in-fact contract against TKI. *See* Complaint at Twentieth Claim for Relief. Specifically, he alleges that through its statements and conduct TKI impliedly promised him he would be terminated only for cause. Id. at ¶ 128.

Under Idaho law, "[a]n implied-in-fact contract term is one that is inferred from the conduct of the parties." *Atwood v. Western Construction, Inc.*, 129 Idaho 234, 239, 923 P.2d 479, 484 (Idaho Ct. App. 1996). In this case, there is no evidence to support the alleged promise to terminate only for cause. Indeed, by Plaintiff's own admissions: (1) the offer letter he received from TKI's president expressly states that "the terms contained herein are not intended to guarantee a duration or employment," (SOF at ¶ 4); (2) shortly after he accepted the offer of employment, Plaintiff received, read and understood TKI's employee handbook which expressly states that TKI may terminate his employment at any time and for any reason, (SOF at ¶¶ 7-8); and (3) no one at TKI ever told him anything contrary to that provision of the employee handbook, (SOF at ¶ 8). Accordingly, TKI is entitled to summary judgment on this claim.

\

\

\

\

## XIV.  CONCLUSION.

As demonstrated above, Defendants are entitled to summary judgment as a matter of law on all twenty of Plaintiff's claims.

DATED this 28 day of July, 2004.

JENNINGS, STROUSS & SALMON, P.L.C.

HALL, FARLEY, OBERRECHT
& BLANTON, P.A.

By _____
J. Kevin West - Of the Firm
Attorneys for Defendants Tessenderlo Kerley,
Inc., and Steve Sailors

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28 day of July, 2004, I caused to be served a true copy of the foregoing DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, by the method indicated below, and addressed to each of the following:

Harr y C. DeHaan                       ✓  U.S. Mail, Postage Prepaid
Attorney at Law                        ___ Hand Delivered
335 Blue Lakes Blvd. N.                ___ Overnight Mail
Twin Falls, ID  83301                  ___ Telecopy

_____
J. Kevin West