Harry DeHaan
335 Blue Lakes Blvd N.
Twin Falls, Idaho 83301
Telephone: (208) 733-0731
Facsimile: (208) 736-2029

Attorney for Plaintiff, Gary Fenwick

IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF IDAHO

* * * * *

| | |
|---|---|
| GARY FENWICK,<br><br>Plaintiff,<br><br>v.<br><br>TESSENDERLO KERLEY, INC., a Delaware Corporation; STEVE SAILORS, an Individual<br><br>Defendants. | Case No.: CIV-03-384-S-MHW<br><br>RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

COMES NOW the Plaintiff, Gary Fenwick, by and through his attorney of record, Harry DeHaan, and hereby responds to the Defendants' Motion for Summary Judgment.

**II. THE PLAINTIFF'S SEXUAL HARASSMENT CLAIM**

The Plaintiff's sexual harassment claim is part of an over-all harassment discrimination claim, which constitutes a continued pattern of harassment to eliminate the Plaintiff as employee for various reasons, which include age, expense and education; as shown by the attached affidavit of the Plaintiff, the sexual innuendoes, the harassment and the attempt to coerce this Plaintiff into quitting by violating his rights under the ADA, continued until virtually the day of his firing.



ORIGINAL

43

The e-mails, attached hereto, demonstrate that the Defendants wanted to "get rid of" Gary very early, for unacceptable reasons.

When they seriously considered firing Gary, they knew that they were very close to violating the law in regards to their discrimination and harassment of Gary Fenwick.

The question of whether they were severe; the sexual harassments claims were severe and pervasive; it is a jury question for the Finder of Fact. There were a number of offensive comments, an attitude of general hostility, followed by forcing this man, who was seventy-five pounds overweight, returning from a heart attack, with diabetes, to shovel gravel outdoors, in one-hundred degree temperatures, to assist in pouring cement.

These acts are not even controverted, but are merely explained away by an off-hand unbelievable assertion that Gary volunteered for such potentially life-threatening duty.

This is not only severe and persuasive, but could have been fatal.

## III. FMLA PROTECTION.

The Plaintiff abandons his claims for FMLA.

## IV. AMERICANS WITH DISABILITIES

The United States equal unemployment opportunity commission states in its handout, attached hereto, when is diabetes a disability under the ADA; the answer, "…under the ADA the determination of whether an individual has a disability is made by a case by case basis."

The fact that the Plaintiff's diabetes contributed to a heart attack, that the Plaintiff had a heart attack, certainly constitutes a disability in this counsel's mind.

## V. PLAINTIFF'S RETALIATION CLAIMS

The Plaintiff did demonstrate that he did engage in a protective activity (i.e., he reported a sexual harassment and discriminatory claim).

Separate and adverse employment decision (there is no questions that the Plaintiff, Gary Fenwick, was fired); that there was a link between the protect activity and the adverse employment decision. The e-mails regularly showed that the Defendants wanted to get rid of the Plaintiff; that they wanted to replace him with a "younger, cheaper lab technician." They discussed the adverse legal situation; they felt that they were in and the fact that they might be exposed to lawsuit, obviously feeling that they had done something wrong. They would submit that Gary Fenwick's firing was perpetual.

## VI. COVENANT OF GOOD FAITH AND FAIR DEALING

The covenant of good faith and fair dealing is implicit in any Idaho contract (citations omitted).

It is clear that Mr. Fenwick did not obtain good faith and fair dealing in this case; he was subject to harassment, intimidation, degradation, ridicule and the Defendants planned to get rid of rid of him. It is a clear violation of the covenant of good faith and fair dealing.

## VII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

We abandon our claim for intentional infliction of emotional distress.

## VIII. SLANDER AND LIBEL

We abandon our claim for slander and libel.

## IX. BREACH OF CONTRACT

The breach of contract is covered by the covenant of good faith and fair dealing.

## X. ESTOPPEL

We abandon our claim for estoppel.

## XI. INVASION OF PRIVACY CLAIMS

We abandon all three claims for the invasion of privacy.

## XII. NEGLIGENCE

We abandon our claim for negligence.

DATED this 20th day of August, 2004.

Harry DeHaan
Attorney for Plaintiff

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on the 20th day of August, 2004, I caused to be mailed a true and correct copy of the foregoing via U.S. Mail, first class, postage prepaid, to the following:

John J. Egbert
Jennings, Strouss & Salmon, P.L.C.
Attorneys at Law
The Collier Center, 11th Floor
201 East Washington Street
Phoenix, Arizona 85004-2385

J. Kevin West
Hall, Farley, Oberrecht & Blanton
PO Box 1271
Boise, ID 83701

HARRY DeHAAN
Attorney for Plaintiff

**Steve Sailors**

**From:** Steve Sailors
**Sent:** Thursday, January 03, 2002 3:40 PM
**To:** Chris Paul; Fernando Solano
**Cc:** Jeff T. Strickland; Ken Gagon
**Subject:** RE: Gary Fenwick

Chris,

Gary has been wrote up on two separate occasions, 7/23/01 and 9/29/00. Each time his attitude and job performance were an issue. His two reviews have been mostly satisfactory. I spoke with both Jeff and Fernando about Gary and his position last month. We are changing the job from a chemist position to a lab tech. Fernando could expand more on that if we are worried about being sued for wrongful dismissal.

Before our shutdown in Dec., I gave Gary a list of things he needed to do after we were down. Two weeks later I had to ask him to wake up from his afternoon nap in the control room and finish what he was ask to do. He called in sick the next day. I have been extremely patient with Gary, giving him numerous opportunities to show his skills.

Yesterday, Gary asked to be exempted from the Continuum physicals we are to take tomorrow. I referred him to Mike to see what he required as necessary. Gary told Mike he has conjunctivitis and an infection in his eyes from the tonometry test administered last year. This is the first I have heard of any problem with his eyes. During the summer Gary did begin wearing goggles while in the lab, thinking the MITC was irritating them.

Gary recently (X-mas day) had chest pains while visiting relatives in CA. He was rushed to the emergency room where he had an angioplasty done . He took several days of sick leave, returning to work yesterday. He said he feels 25 years younger and has more energy than ever.

I still believe I could hire a lab tech to replace Gary that would be much more willing to do what he's ask. TKI has been very successful in training good employees to be lab technicians. This would also send a very good signal to the rest of our Burley employees that we are serious about improving our workforce and will take measures to ensure we work as a team and to benefit TKI.

I hope I didn't overload your memory Chris, sorry I got a bit carried away. My patients are gone.

Steve

-----Original Message-----
**From:** Chris Paul
**Sent:** Thursday, January 03, 2002 2:48 PM
**To:** Steve Sailors; Fernando Solano
**Cc:** Jeff T. Strickland; Ken Gagon
**Subject:** RE: Gary Fenwick

Steve,

With Gary's age and past history, we need to be very precise on what we are about to do. This one is a problem child. As I recall, we have write-ups on his work habits (lab sloppiness, etc.) that you wrote in his job performance review. And you wrote him up for his poor work attitude a while ago. Please refresh my memory.

Chris

-----Original Message-----
**From:** Steve Sailors
**Sent:** Thursday, January 03, 2002 2:30 PM
**To:** Fernando Solano
**Cc:** Jeff T. Strickland; Ken Gagon; Chris Paul
**Subject:** Gary Fenwick

Fernando,

Next week, I would like to proceed with our plan to relieve Gary of his duties. Do you need to know an exact date

**Steve Sailors**

**From:** Fernando Solano
**Sent:** Thursday, January 03, 2002 3:53 PM
**To:** Steve Sailors
**Cc:** Jeff T. Strickland; Ken Gagon; Chris Paul
**Subject:** RE: Gary Fenwick

Steve,

In reviewing Gary's file, I must admit that I am uncomfortable with terminating Gary. Let me summarize the documentation that we have so far on him:

- May 2000 - Good marks on his performance review.
- Sept 2000 - In response to a letter that Gary wrote you, you wrote a memo that was critical of Gary's work attitude.
- March 2001 - Good marks on his performance review.
- July 2001 - You wrote Gary a memo critical of his performance and work attitude.

As you can see, the documentation is mixed. Do you have other logs or documentation that you've kept on Gary? As I ~e it, the critical issues with Gary are the following:

- Work performance
- Work attitude
- A chemist doing a lab tech's job.

My main concern is age discrimination, particularly in light of his recent heart problems. The following are our options:

- Terminate/lay him off now with a severance offer and hire a less experienced lab tech and take our chances with a possible law suit. He may be desperate enough to sue given the alternatives regarding his medical insurance needs.
- Wait and vigorously continue documenting his inefficiencies.
- Given the problems in the relationship between Gary and TKI, we can make him a one-time early exit offer (say 6 weeks of pay). If he doesn't accept, we won't terminate him at this time but he will be on the equivalent of probation. If we feel justified in terminating him later on if these problems continue, there will be no severance. At least this will put him on notice. Who knows, perhaps his performance will improve given this threat.

Thoughts, comments?

Fernando

-----Original Message-----
**From:** Steve Sailors
**Sent:** Thursday, January 03, 2002 2:30 PM
**To:** Fernando Solano
**Cc:** Jeff T. Strickland; Ken Gagon; Chris Paul
**Subject:** Gary Fenwick

Fernando,

Next week, I would like to proceed with our plan to relieve Gary of his duties. Do you need to know an exact date to complete the paperwork? Are we still giving a severance package? Do any of you have any comments or concerns about this? Jeff will come down next week unannounced and we'll sit with Gary and give him the news.

I'm concerned with hiring a new lab tech and getting them trained in time for our production run later this month and through Feb. I'm confident that we can make spec. product without Gary. Although it's nice to see an analysis to confirm that.

Steve

**Fernando Solano**

**From:** Ken Gagon
**Sent:** Friday, January 04, 2002 8:12 AM
**To:** Chris Paul; Steve Sailors; Fernando Solano
**Cc:** Jeff T. Strickland; Terry Ludwig; Chuck Kominski
**Subject:** RE: Gary Fenwick

Or you can drive the Beer truck. Its a shame that for whatever reason we don't have an appropriate file to comfortably do what you all know is right and correct. Although Gary is not the only example. Ken

-----Original Message-----
**From:** Chris Paul
**Sent:** Thursday, January 03, 2002 5:28 PM
**To:** Ken Gagon; Steve Sailors; Fernando Solano
**Cc:** Jeff T. Strickland; Terry Ludwig; Chuck Kominski
**Subject:** RE: Gary Fenwick

Steve,

I by no means have changed my mind on the issue, but I read what was in his file today and it was one of the reprimands and a job performance review. The second reprimand letter was missing. Call Fernando and get that particular point corrected. I need to read that reprimand. Additionally, the performance review said that he was meeting your expectations.

I had a long discussion with Fernando and we are realistically exposed on this one with the age discriminations law suits that occur these days. And we all believe that Gary would do exactly that. In a lawsuit, that performance review would come into play, especially after we replace him with a younger, and cheaper technician.

What I propose to do is to continue down the path we have previously chosen of disciplinary action, until we have him.

The alternative at this point is to have Fernando approach Gary and offer him a one-time, take-it-or-leave-it offer for a severance package. With his tenure, this would not be a huge expense. All copied need to give me your thoughts on this one.

I am not worried about the spring season that it should interfere with what we are doing here. If nothing else, we bring Rob Smith over to train someone or cover depending upon Finley load.

Chris

-----Original Message-----
**From:** Ken Gagon
**Sent:** Thursday, January 03, 2002 3:44 PM
**To:** Steve Sailors; Chris Paul; Fernando Solano
**Cc:** Jeff T. Strickland; Terry Ludwig; Chuck Kominski
**Subject:** RE: Gary Fenwick

As I hope you all know, I strongly support the change. Ken

-----Original Message-----
**From:** Steve Sailors
**Sent:** Thursday, January 03, 2002 3:40 PM
**To:** Chris Paul; Fernando Solano
**Cc:** Jeff T. Strickland; Ken Gagon
**Subject:** RE: Gary Fenwick

Chris,

Gary has been wrote up on two separate occasions, 7/23/01 and 9/29/00. Each time his attitude and job performance were an issue. His two reviews have been mostly satisfactory. I spoke with both Jeff and Fernando about Gary and his position last month. We are changing the job from a chemist position to a lab tech. Fernando could expand more on that if we are worried about being sued for wrongful dismissal.